IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **James V. Wallace,** | : | CIVIL ACTION NO. 1:11-CV-1936 |
| Petitioner, | : | |
| | : | **(Judge Caldwell)** |
| v. | : | |
| | : | **(Magistrate Judge Blewitt)** |
| **David Ebbert, Warden,** | : | |
| **Kevin Bittenbender, DHO,** | : | |
| Respondents | : | |

## REPORT AND RECOMMENDATION

**I. Procedural Background.**

On October 19, 2011, Petitioner, James V. Wallace, while he was an inmate confined at the Allenwood Federal Correction Institution in White Deer, Pennsylvania ("FCI-Allenwood"), filed, *pro se*, this instant Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, challenging as excessive the sanctions which the Disciplinary Hearing Officer ("DHO") imposed on him for violation of BOP Code 112, use of narcotics. (Doc. 1). Petitioner attached an Exhibit to his habeas petition, namely, a copy of the DHO's September 3, 2010 Report. Petitioner Wallace is presently confined at FCI-Memphis, TN. (*See* Doc. 12, Ex. 1, ¶ 4). Petitioner names as Respondents David Ebbert, Warden at FCI-Allenwood, and DHO Kevin Bittenbender.[1]

---

[1] As Respondents point out (Doc. 12, p. 2, n. 3), Petitioner named, in part, one correct Respondent, Warden Ebbert. Since this action is a §2241 habeas petition, and since Petitioner was confined at FCI-Allenwood when he filed his petition, the Warden at this prison is the proper Respondent. *See* 28 U.S.C. § 2242 and § 2243. *See Rivera v. Scism*, Civil No. 10-1773, M.D. Pa. However, we agree with Respondents that DHO Bittenbender is not a correct Respondent in this case, and should be dismissed. Also, we find that Petitioner correctly filed his habeas petition with this Court since he was incarcerated in the Middle District of Pennsylvania at the time of his challenged DHO hearing and sanctions. *See Rumsfeld v. Padilla*, 542 U.S. 426 (2004).

On December 15, 2011, the Court entered an Order dismissing the case for Petitioner's failure to pay the filing fee. (Doc. 5). However, on December 20, 2011, Petitioner paid the filing fee, and the case was re-opened on December 22, 2011. (Docs. 7 and 8, respectively).

On December 28, 2011, the Court issued a Show Cause Order directing the Clerk of Court to serve Respondents with a copy of the habeas petition and the Show Cause Order. (Doc. 9). Service was properly executed, and on January 17, 2012, Respondents filed a Response to the Petition for Habeas Corpus with an Exhibit and Attachments. (Docs. 11 and 12, respectively).

Lastly, Petitioner filed a Traverse on February 3, 2012, with an attached Exhibit, which made the case ripe for disposition. (Doc. 14). The undersigned has been assigned this case to issue a Report and Recommendation.

**II. Factual Background.**

On August 23, 2010, Petitioner was issued an incident report for violating BOP Code 112 "Use of Any Narcotics Not Prescribed by Medical Staff" stemming from a urine sample Petitioner had provided on August 17, 2010, which showed a positive reading for opiates. (Incident Report No. 2057475, Doc. 12, Ex. 1, Att. B). This initial positive reading was affirmed by the National Toxicology Lab, Inc., the place where the specimen was mailed to be further analyzed. (*Id.*). Petitioner received a copy of the incident report on August 23, 2010, the same day it was issued. (*Id.*).

The Unit Discipline Committee ("UDC") made a determination on August 24, 2010, that the DHO should conduct a hearing on the incident report filed against Petitioner because of the charge's severity. (*Id.* at ¶'s 18-21). The UDC recommended that if Petitioner was found guilty of the charge, he should be sanctioned to loss GCT and disciplinary confinement time.   Petitioner received the incident report and advisement of his rights at a DHO hearing on August 24, 2010. Petitioner also received a Notice of Disciplinary Hearing before the DHO on August 24, 2010.   However, Petitioner did not request witnesses or request a staff representative for his DHO hearing. (Doc. 12, Ex. 1, Attach. C, B.S. p. 15).

At the DHO hearing held on September 2, 2010, Petitioner admitted that he was in violation of Code 112. (Doc. 12, Ex. 1, Attach. D, DHO Report, p. 2). The DHO issued his decision on September 3, 2010, when he decided that Petitioner committed the prohibited act in violation of Code 112 because, on August 17, 2010, Petitioner admittedly used and tested positive for narcotics, more specifically, opiates. (*Id.*).   The DHO imposed sanctions against the Petitioner including: (1) an eighteen (18) month loss of telephone privileges; (2) a three (3) year loss of visiting privileges and a three (3) year loss of contact visiting privileges; (3) a fifty-four (54) day disallowance of Good Conduct Time ("GCT"); (4) a sixty (60) day disciplinary segregation; and (5) forfeiture of four hundred fifty-eight (458) days of non-vested GCT. (Doc. 12, Ex. 1, Attach. D, DHO Report, p. 3).   The DHO's reasons for the sanctions were as follows:

> WALLACE's use of drugs (4th Offense) potentially threatens both the orderly running of the facility and the safety of both staff and inmates.  Drug use is

3

> preceded by the illicit substance being introduced by breaching the secure perimeter of the institution.  The purchase of drugs tends to lead to debt and drug related debt has great potential to lead to violence in relation to payment/non-payment of the same.  Inmates are the target for this violence and staff have great potential for injury responding to this violence.  Further, being under the influence of drugs limits inmate's ability to be involved in meaningful correctional programming.  Accordingly, Disciplinary Segregation, the Disallowance of Good Conduct Time, and the Forfeiture of Non Vested Good Conduct Time is sanctioned to punish WALLACE for his behavior, while the Loss of Privileges (Phone, Visit and Visit-NO CONTACT) is used to hopefully deter him from it in the future.

(*Id*.).

After receiving the DHO's report on September 3, 2010, Petitioner then filed this instant habeas petition challenging the sanctions the DHO imposed as excessive.  (Doc. 1). Petitioner was confined at FCI-Allenwood from June 9, 2008 until October 24, 2011, and now is confined at FCI-Memphis since November 2, 2011, with a projected release date of May 30, 2017, based on GCT.  (Doc. 12, Ex. 1, ¶4).

**III. Habeas Petition Claims.**

In his habeas petition, Petitioner claims the following regarding the sanctions imposed by the DHO: (1) the DHO's sanctions of fifty-four (54) days disallowance of GCT and a four hundred fifty-eight (458) day forfeiture of non-vested GCT are "harsh and unjust"; (2) these particular two sanctions were inappropriately enhanced by taking his three prior offenses into account because BOP policy states that "only repetitive violations of same prohibited act occurring within a "relatively short" time frame (18 mos) can be used to enhance.  3 priors were over 3 yrs. old."; and (3) Petitioner alleges disparity of sanctions stating that the DHO's sanctions from one person to the next were "wildly dissimilar," and that the DHO "has no clear guidelines." (Doc. 1, p. 3-4).  Important to note is that in his

Traverse, Petitioner makes it clear that his habeas petition does not challenge either the procedural due process requirements of the DHO hearing or the evidentiary findings of the DHO. (Doc. 14, p. 3). Based on the aforementioned habeas claims, Petitioner requests the following relief: "that all or part of the forfeited 458 days GCT be restored." (Doc. 1, p. 6).

Respondents claim that the sanctions imposed by the DHO are not unjust, harsh or an impermissible enhancement of the sanctions outlined by the applicable statute, 28 C.F.R. §541.13, sections B, B.1, D and G. (Doc. 12, pp. 10-12). Respondents claim that this statute and BOP policy permit the DHO officer to make an "independent analysis to determine what sanctions will be imposed on a disciplinary action," and that the DHO's imposed sanctions are in accordance with the 28 C.F.R. §541.13. (*Id.* at 12).

Furthermore, out of an abundance of caution, Respondents presented both a procedural due process and evidentiary standard analysis, even though Petitioner did not allege any such violations or claims in his habeas petition. As such, we will also perform an analysis on these two issues to err on the side of caution. (*Id.* at 6-10).

## IV. Discussion.

Petitioner states in his habeas petition that he fully exhausted his BOP administrative remedies with respect to his habeas claim regarding his challenge to his disciplinary conviction by the DHO and the forfeiture of four hundred fifty-eight (458) days of GCT. (Doc. 1). Respondents concede that Petitioner exhausted his BOP administrative remedies with respect to his present habeas claims. (Doc. 12, p. 2, n. 2). Thus, we find that there is no dispute that Petitioner exhausted his instant habeas claims as required. *See Moscato v.*

*Federal Bureau of Prisons*, 98 F.3d 757 (3d Cir. 1996)(It is well-settled that before a prisoner can bring a habeas petition under 28 U.S.C. § 2241, administrative remedies must be exhausted). If a prisoner does not exhaust available remedies, the petition should be dismissed. *Arias v. United States Parole Commission*, 648 F.2d 196, 199 (3d Cir. 1981); *Mayberry v. Pettiford*, 2003 WL 21635306 (5th Cir.); *Lindsay v. Williamson*, Civil No. 07-808, M.D. Pa., (7-26-07 Memo, J. Caldwell), slip op. p. 4; *Sherman v. Lindsay*, 2007 WL 3119380 (M.D. Pa.); *Hawk v. Sherman*, 2008 WL 360897, * 6 (W.D. Pa.); *Harris v. BOP*, 787 F.Supp.2d 350, 360 (W.D. Pa. 2011).

Further, we find that inasmuch as Petitioner is challenging the DHO's finding that he was guilty of the charged offense and the DHO's sanction of GCT forfeiture, he can proceed in a § 2241 habeas petition over which this Court has jurisdiction. *See Pachtinger v. Grondolsky*, 340 Fed.Appx. 774 (3d Cir. 7-28-09).

> *A. Petitioner received procedural due process throughout all stages of the disciplinary action*

Although Petitioner does not allege any procedural due process violations, to err on the side of caution, we engage in a procedural due process analysis for the case at hand. In *Wolff v. McDonnell*, the U.S. Supreme Court stated that "[p]rison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." 418 U.S. 539, 556 (1974)(citing *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)). *Wolff* also outlined the due process procedures that must be followed in an institution disciplinary hearing: (1) the inmate must receive at least twenty-four (24) hours

advanced written notice of the claimed violations; (2) the inmate must receive a "written statement of the fact-finder as to the evidence relied upon and the reasons for the disciplinary action taken;" (3) the inmate must be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals; (4) the inmate must be allowed to seek the aid of a fellow inmate, or aid in the form of help from a staff member, and (5) the disciplinary hearings must be impartial.  *Wolff,* 418 U.S. at 564-571; *See also Pachtinger v. Grondolsky*, 340 Fed.Appx. at 776.  Confrontation and cross-examination are not Constitutional requirements in disciplinary hearings.  *Id*.

      In *Redding v. Holt*, 2007 WL 2155543, *6 (M.D. Pa.), the Court stated:

The Bureau of Prisons ("BOP") has specific procedures for inmate discipline pursuant to 28 C.F.R. § 541.10, *et seq.* The regulations, in relevant part, provide:
> [I]f the DHO finds that the inmate has committed a prohibited act(s) other than the act(s) charged, then the DHO shall record those findings clearly and shall change the Incident Report to show only the incident and code references to charges which were proved.
> § 541.17(f).

      In addition to the due process requirements set forth in *Wolff* with respect to cases involving loss of good conduct time, the Court in *Williams v. Hislop*, 2007 WL 4111427, *4 (M.D. Pa. 2007), outlined the Bureau of Prisons' inmate disciplinary procedures:

> The Bureau of Prisons' inmate disciplinary procedures are codified at 28 C.F.R. § 541, *et. seq.*, and entitled, *Inmate Discipline and Special Housing Units*.  These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme Court.  *See Von Kahl v. Brennan*, 855 F.Supp. 1413, 1418 (M.D.Pa.1994).  Pursuant to these regulations, staff shall prepare an Incident Report when there is reasonable belief that a violation of BOP regulations has been

>committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful. 28 C.F.R. § 541.14. The incident is the referred to the UDC for an initial hearing pursuant to § 541.15. The UDC hearing is "ordinarily held within three work days from the time staff became aware of the inmate's involvement in the incident" and does not include the initial day staff learns of the incident, weekends, or holidays. *See* 28 C.F.R. § 541.15(b). ... If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a disciplinary hearing officer for a hearing. 28 C.F.R. § 541.15. "The DHO shall give the inmate a written copy of the decisions and disposition, ordinarily within 10 days of the DHO's decision." 28 C.F.R. § 541.17(g).

In the present case, it is clear, based on Respondents' evidence (Doc. 12, Ex. 1, Attach. B-E), that the Petitioner was afforded all the rights set forth in *Wolff* and in the aforementioned BOP's regulations. We find that the record clearly demonstrates that Petitioner was provided all of the required procedural due process safeguards. Petitioner was given a copy of the Incident Report, which clearly set for the charge against him, he received at least twenty-four (24) hours advance written notice of the charge, and was advised of his rights by the investigating officer. (*Id.* at Attach. C).

Also, the record shows that Petitioner was given and utilized the opportunity to make a statement, to be represented by staff, and to present witnesses and evidence (though he chose not to do so). (*Id.* at Attach. D*).* Additionally, the Petitioner was notified of his right to appeal the decision of the DHO, and he received a copy of the DHO report, which documented the evidence the DHO relied upon in reaching his conclusion. (Doc. 12, Ex. 1, Attach. D).

8

Based on the above stated guidelines set forth by the Supreme Court in *Wolff*, it is clear there was no violation of Petitioner's due process rights with respect to the disciplinary proceedings and DHO hearing.

*B. The DHO's decision was based on and is supported by "some evidence"*

While Petitioner conceded that he used narcotics as charged in the incident report, and has not seemingly raised any evidentiary issues, we again err on the side of caution, and provide an evidentiary analysis in relation to the case at hand. "A prison disciplinary determination comports with due process if it is based on 'some evidence.'" *Pachtinger v. Grondolsky*, 340 Fed.Appx. at 777 (citing *Superintendent v. Hill*, 472 U.S. 445, 454-56 (1985)("[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board")). "This standard is minimal and does not require examination of the entire record, an independent assessment of the credibility of witnesses, or even a weighing of the evidence." *Id.* (citing *Superintendent v. Hill*, 472 U.S. at 445; *Thompson v. Owens*, 889 F.2d 500, 501-02 (3d Cir. 1989)).

The *Redding* Court stated:

> In *Superintendent v. Hill,* 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985), the United States Supreme Court held the standard of evidence required to comport with due process in prison disciplinary hearings is whether there is "some evidence" in the record to sustain a finding that the inmate committed the alleged offense. The Supreme Court in *Hill* explained the some evidence" standard as follows:
>
> > Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is

>any evidence in the record that could support the conclusion reached by the disciplinary board. The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of the prison administrators that have some basis in fact. *Id.* at 455-56. (Citations omitted).

2007 WL 2155543, *4-*5.

Prior to the DHO hearing, Petitioner was advised of his rights. During the DHO hearing, Petitioner testified before the DHO. In applying the above stated precedent to the instant case, the DHO fully documented the evidence he considered in making his determination, and concluded that the greater weight of the evidence supported the finding that Petitioner committed the charged prohibited act in violation of BOP Code 112. (Doc. 12, Ex. 1, Attach. D). Based upon the facts set forth in the DHO report, the DHO clearly had "some evidence" to find that Petitioner committed the prohibited act. Specifically, the DHO found as follows:

>During this discipline hearing regarding, WALLACE, James, Register No. 36156-060, for the charges of Use of Any Narcotics Not Prescribed by Medical Staff, Code 112, the following information was evidentiary and documented by the DHO in his findings.
>
>WALLACE'S involvement in the incident as noted in Section 11 of Incident Report 2057475, as provided by J.DeWald, SIS Technician, was viewed as inculpatory in this case. Paraphrased J.DeWald writes: On August 17, 2010, at 10:40 PM, inmate WALLACE, James 36156–060 provided urine sample with Specimen ID No. BOP0001022093 that showed an initial on-site positive result for OPI. The test was mailed to National Toxicology Lab, Inc. on August 18, 2010, for confirmation of the positive result. On August 23, 2010, at approximately 4:00 PM, I received notification from National Toxicology that urine specimen No.: BOP0001022093 was confirmed positive for Opiates (Morphine). The institution hospital was contacted regarding inmate WALLACE medical records to verify if any

>medications were issued which would produce a positive test for this drug. Medical staff indicated that inmate WALLACE had not received any medication that would cause a positive result for Opiates.
>
>Inculpatory evidence in the form of Toxicological Report from National Toxicological Laboratories, Dated 8/20/2010, corroborated the evidence cited in the incident report in this case. The Toxicological Report indicated the urine sample provided by Inmate WALLACE tested positive for Opiates/ Morphine.
>
>Inculpatory evidence in the form of Chain of Custody Form from National Toxicological Laboratories signed by Inmate WALLACE dated 8/17/2010 corroborated the evidence cited in this report. The Chain of Custody Form indicated the urine sample which tested positive for the presence of Opiates/Morphine is the same urine sample provided by WALLACE. This was verified by Inmate WALLACE as indicated on the form.
>
>Inculpatory evidence in the form of a memorandum from Officer DeWald dated 8/23/2010 corroborated the evidence cited in this report. A review of the inmates medical records indicate he was not prescribed any medication which would produce a positive test result for the presence of Opiates/ Morphine in his urine. This was verified by Health Services staff on 8/23/2010.
>
>The DHO believed the information provided by the staff members involved in this case, as they derived no known benefit by providing false information.
>
>Upon questioning by the DHO, WALLACE admitted the charge(s). He elaborated upon his plea by stating, the report is true.

(Doc. 12, Ex. 1, Att. D, p. 2).

Again, Petitioner has not seemingly challenged the DHO's finding that he committed the prohibited act of use of narcotics in violation of Code 112. (Doc. 1). Thus, as discussed above, we find that the DHO properly documented the evidence relied upon in making the determination that the Petitioner committed the Code 112 prohibited act and in sanctioning

him.  The DHO had more than "some evidence" to find that the prohibited act was committed by the Petitioner.  See *Superintendent v. Hill*, 472 U.S. at 454-55; *Pachtinger v. Grondolsky*, 340 Fed.Appx. at 777.  Therefore, we find that the DHO's determination that the greater weight of the evidence supported a finding that Petitioner committed the act of Use of a Narcotic, in violation of Code 112, was supported by more than sufficient evidence.

> *C. The DHO's imposed sanctions were within the sanction range permissible under 28 C.F.R. §541.13*

Wallace claims that the sanctions the DHO imposed are "harsh and unjust," excessive, and that the DHO should not have enhanced his loss of GCT based on his three prior offenses.  According to 28 C.F.R. §541.13, the sanctions applicable to Wallace's Code 112 violation include: (1) Loss of privileges; (2) Disciplinary segregation up to sixty (60) days; (3) Disallowance of between fifty (50) and seventy-five (75) percent of good conduct time available for a year (27-41 days); (4) fifty-four (54) day disallowance of good conduct time; and (5) forfeiture of up to one hundred (100) percent of non-vested good conduct time.  28 C.F.R. §541.13 (2010), Table 3.  "BOP Program Statement PS 5884.03 ("Good Conduct Time Under the [PLRA]"), ... , states that "[GCT] earned is subject to disciplinary forfeiture or disallowance."  *Hurst v. Bledsoe*, 2011 WL 320576, *5 (M.D. Pa. 1-12-11).

As mentioned, the DHO imposed the following sanctions on Wallace for his violation of Code 112: (1) eighteen (18) months loss of telephone privileges; (2) three  years loss of visiting privileges (contact and non-contact); (3) sixty (60) days of disciplinary segregation;

and (4) four hundred fifty-eight (458) day forfeiture of non-vested good conduct time. (Doc. 1, p. 9). Petitioner claims that the DHO's sanctions of fifty-four (54) days disallowance of GCT and a four hundred fifty-eight (458) day forfeiture of non-vested GCT are "harsh and unjust." (*Id.* at 3). He also claims that these particular two sanctions were inappropriately enhanced by taking his three (3) prior offenses into account because BOP policy states that "only repetitive violations of same prohibited act occurring within a "relatively short" time frame (18 mos) can be used to enhance. 3 priors were over 3 yrs. old." (*Id.*). In his Traverse, Petitioner states that prior sanctions for his three (3) prior offenses never exceeded more than forty-two (42) days loss of GCT. (Doc. 14, p. 3). He also states that because his prior convictions occurred over twenty-four (24) months prior to the offense at issue, these prior offenses should not have been considered because they were over the typical eighteen (18) month time-frame referred to in BOP policy. (Doc. 1, p. 3). Finally, Petitioner alleges disparity of sanctions stating that the DHO's sanctions from one person to the next were "wildly dissimilar," and that the DHO "has no clear guidelines." (*Id.* at 4). Based on these claims, Petitioner requested the following relief: "that all or part of the forfeited 458 days GCT be restored." (*Id.* at 6).

All of Petitioner's aforementioned claims are without merit because the sanctions imposed by the DHO were in accordance with BOP policy and 28 C.F.R. §541.13 sanctions available for level 100 offenses (which includes Petitioner's Code 112 offense). First and foremost, the three (3) prior violations the DHO relied on to enhance Petitioner's sanctions were repetitive violations similar to the violation at issue, and these prior violations occurred

withing a relatively short time-frame in relation to the violation at issue.  Petitioner was convicted of Code 112 violations (use of illegal drugs) on May 31, 2007, January 29, 2007 and February 16, 2000.  He was also convicted of a similar Code 111A offense (attempted use of illegal drugs and/or alcohol) on March 7, 2001.  We find it is clear that these prior offenses are extremely similar to the violation at issue, and the DHO has the discretionary power to consider these prior offenses even though they are occurred over eighteen (18) months prior to the violation at issue.

In terms of the four hundred fifty-eight (458) day forfeiture of non-vested GCT, we find that the DHO was within his discretion to  impose a sanction of 458 day forfeiture of non-vested GCT. *See* Doc. 12, Ex. 1, Att. A, B.S. p. 8).  As stated above, 28 C.F.R. §541.13, section B permits a one hundred (100) percent forfeiture of non-vested GCT.  28 C.F.R. §541.13, B.  *See Hurst v. Bledsoe*, 2011 WL 320576, *6("the BOP regulation dealing with sanctions, 28 C.F.R. §541.13, expressly contemplates forfeitures up to 100% of an inmates' good time credit.").  Therefore, we find that Petitioner's four hundred fifty-eight (458) day forfeiture of non-vested GCT sanction is not a harsh, unjust, or inappropriate enhancement in violation of BOP policy as the policy clearly permits one hundred (100) percent GCT forfeiture.  (*See* Doc. 12, Ex. 1, Att. A, B.S. p. 8).

Furthermore, the disallowance of fifty-four (54) days of GCT did not violate BOP policy, and therefore, was not a harsh, unjust or an inappropriate sanction enhancement.  BOP regulations  permit the DHO to go above the 28 C.F.R. §541.13, section B.1 sanction guideline of twenty-seven (27) to forty-one (41) days disallowance of GCT in cases where

there is a repetitive violation of the same prohibited act within a relatively short time.  *See* C.F.R. §541.13 (2010), Table 4.  The offense at issue was the Petitioner's fourth offense regarding drug usage in violation of Code 112, with his three prior offenses dated May 31, 2007, January 29, 2007 and February 16, 2000.  (Doc. 12, Ex. 1, pp. 21-22).  Petitioner Wallace also violated Code 111A (attempted introduction of drugs/alcohol) on March 7, 2001.  (*Id*. at 22).  Therefore, the DHO's decision to impose the sanction of disallowance of fifty-four (54) GCT is permitted under BOP policy and was not excessive.

**V.  Recommendation.**

Based on the foregoing, it is respectfully recommend that Petitioner's Habeas Petition **(Doc. 1)** be denied.

        s Thomas M. Blewitt  
        **THOMAS M. BLEWITT**  
        **United States Magistrate Judge**

**Dated: April 30, 201**2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **James V. Wallace,** | : | **CIVIL ACTION NO. 1:11-CV-1936** |
| **Petitioner,** | : | |
| | : | **(Judge Caldwell)** |
| v. | : | |
| | : | **(Magistrate Judge Blewitt)** |
| **David Ebbert, Warden,** | : | |
| **Kevin Bittenbender, DHO,** | : | |
| **Respondents** | : | |

### NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing Report and Recommendation dated **April 30, 2012.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where

required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

                                                s/ Thomas M. Blewitt
                                                **THOMAS M. BLEWITT**
                                                **United States Magistrate Judge**

**Dated: April 30, 2012**